Good morning. May it please the Court, Robert Gaiarsa on behalf of Appellant Sissevel. There are several issues presented in this case, and I'd be happy to answer the panel's questions about any of them, but if I may, I would like to focus on the Board's decision on the motion to amend, and specifically start with the patentability decision by the Board, because I think the Board's errors there also highlight the Board's errors in terms of the enlargement of scope, or the purported enlargement of the scope of the proposed claims. I'm happy to have you start there, but let me ask you a preliminary question, which is, you would need to prevail on the two issues, right? One is whether it enlarges scope, and the other is whether it was obvious, irrespective of whether it enlarges scope. You need to So, the Board, in addressing the patentability of the proposed amended claims on Apex 75, said that the additional claim limitations, beyond the RRC protocol, that Sissevel did not explain the effect of those additional limitations on the motivation to combine, or on the patentability. And if you look at Apex 75, what the Board cited for that proposition was only the reply brief by Sissevel. See it at four to five on Apex 75. The reason that the Board couldn't find those arguments is because they weren't in the reply brief. They were in the opening brief on the motion to amend, at Apex 822 to 828. And if you recall, the Board's patentability decision on the proposed amended claims had three separate rounds, with four pieces of prior art. First was the TS reference, that was the base for all three, and then you had Killian, Kissy, and the CS 0005 reference. On Apex 823, in Sissevel's opening brief, addressing Kaling, which is the top paragraph there, Sissevel explained that the mobile station monitors the signal strengths of the identified channels and selects the channel to retry. This is in contrast to the proposed Substitute 36, where the network selects it. And that was a key distinction in these other claim limitations that the Board did not recognize. Namely, in that setting limitation, the third limitation, it was changed to set a value for a frequency parameter, and it also had to use the frequency parameter that was coming down from the network. Meaning that instead of the mobile station having choice, it had to use whatever the network was telling it to use for the frequency parameter itself. So are you contending that is a new argument in favor of the patentability of the substitute claims that you did not make or have to make when you were trying to preserve the original claims? Correct, Your Honor. And where do you make that argument to the Board, that new argument in connection with the motion to amend? So that is on the Apex 823 that I was reading from. That is the opening brief. In the Board's opinion on Apex 75, the Board only addressed the reply brief. That is what they said. It did at 4 to 5. They did not address the opening brief. And so in that opening brief is where we specifically said the mobile station is selecting the channel to retry in Killian, for example. That is in contrast to the proposed substitute claim where the network selects. And again, that is the ordinary meaning of using. Let's assume we agreed with you on all that. And we will put aside the broadening for a moment. Would we remand to the Board or would we say you get your substitute claims? You would remand to the Board, Your Honor. Because the Board simply did not address it. And it was a simple straightforward mistake because the Board did not see the opening brief or, sorry, did not cite to the opening brief and did not discuss these arguments. But if we walk through that opening brief and I would like to take the Court through it, all of the pieces of prior art are addressed in those pages. Killian, for example, says that. I just read that. KISI, the second piece of prior art, is in the middle of Apex 823. Again, the channels are generated from the mobile station. And there is no frequency parameter indicated by the network as proposed substitute claim 36. Those statements, again, for Killian and KISI are repeated on Apex 825 and 826. For Killian, for example, five lines from the bottom of Apex 825. Because the mobile station ultimately selects the channel and does not use only the channel sent by the network, it is fundamentally different than the connection rejection message as further limited in proposed substitute claim 36. The same on Apex 826 for KISI. As it says, as with Killian, because the mobile station ultimately selects and does not use only the channel sent, the direct to retry message is fundamentally different than the connection rejection message. That is further limited in substitute claim 36. For CS0005, the same thing. Again, on the bottom of 823, in CS0005, it says that the channel assignment message is directed to a specific channel. The frequency parameter, though, is different in substitute claim 36. Therefore, in the next page, CS0005 does not contain a teaching or suggestion for the mobile station frequency parameter indicated by the network. That is what was being said about these additional limitations in the opening brief on the motion to amend below that the board did not cite. This aligns also with the patentability of the claims because it traverses exactly what the board was saying in its findings on Killian and KISI. For instance, on Apex 31, the board finds on the bottom of that page in the middle that the mobile station selects the channel. The same thing for KISI, and this is on Apex 40. KISI's mobile station uses this information to set a channel. Again, KISI's mobile station sets a channel or other optional parameters. That is exactly what the board found for the patentability of the original claims, that in those pieces of prior art, the mobile station was selected. In the amended claims, it is a network that is selecting those limitations. If we accept all of that and that those are new arguments and the board overlooked them, that would lead to a remand subject to the other issues in the appeal. Yes, Your Honor. Are there any other new arguments you made for the patentability of the substitute claims that you did not have to make for the original claims that you say the board overlooked, or have you now put them all out there for us? I put them out there except for the TS standard, which was the base reference. That's on Apex 828, Your Honor. That does not include a frequency parameter. The board actually agreed with that in its analysis of the merits of the original claims. It agreed with that on Apex 55, where it said the petitioner acknowledges that there's no frequency parameter coming down from the network in the TS standard. The board did consider that point, right? It considered that point because that point was also made for the original one for the TS standard, Your Honor. This also, the error that the board made here also highlights how the amended claims were narrower, too, because what this control from the network coming down and using that frequency parameter saying is the definition of using that last additional claim limitation that was added in the amended claims. I'm sorry, just before you go, can you show me where that argument was made in blue? I mean, I know you had a lot of issues going on in blue, but the argument that the board failed to consider these arguments in blue. Absolutely. It's on page 28 of the blue brief, Your Honor. We say the board did not analyze any of the other revisions to substitute claim 36 that demonstrate the patentability to substitute claim 36 in its dependent claims over the prior arc. On the next page, we also talk on page 29 of the blue brief, we talk about the motivation to combine. Those issues also address the motivation to combine. We cite Apex 822 on that page, and that's the start of the discussion that I was talking to the panel about also. And red even cited that section of the opening brief in its own brief on page 30 of the red brief. They acknowledged that those arguments were made. The problem here, though, is that the board simply forgot about them, it seems, when they were talking about the reply brief. But in terms of the narrowness of the claims... Just to follow up on Judge Gross, the citation to A823, A828, the emphasis on the network, where in the blue brief do you point out to us that that's the specific points that the board overlooked? So the blue brief included the citation to that general argument, and it made the basic argument, which is the same one we're making now, which is that the board did not consider the additional limitations. And it's a very basic argument. I'm taking that as an admission that you didn't make the specific point that you started with in your argument. The additional clarity of which ones and where the argument was made was not made directly in the blue brief. But the argument itself was preserved. It's not a very complex argument. The citation to the board's opinion was there, 73 to 75, and we said it did not address the other limitations. There's only a certain number of limited ways to actually say the board didn't say something. And so what I'm trying to do for your honors is lead you through exactly why that was also the case, too. But as Judge Prost pointed out, we would have to succeed on both. And I believe that the patentability, how the board approached the patentability and patentability arguments themselves show how the claim was narrowed. Again, using the frequency parameter, which is the last limitation, the board agreed on Apex 72. I believe that that was a limiting addition to the claims itself. But the board did not consider that using the frequency parameter in context of saying that the claims were expanded once you took out the other original claim language of setting the value based at least in part on the information in the frequency parameter. So if you could focus on that last part, because it's your burden to show that the claims were either narrowed or kept at the same scope in all respects. If they were broadened in even a tiny incidental respect, then you can't get your motion for amended claims granted, correct? Not exactly, your honor. I would disagree with that in part. If there is something that is covered by the new claims that was not covered by the original claim, then yes. Okay. So the board talks about on A71 and thereabouts that in the substitute claims, the frequency parameter could be used, for instance, just its existence could be used. Whereas in the original claims, it was narrower because the system had to use information from the frequency parameter. And they're saying, therefore, your amended claims would capture at least some embodiment that wouldn't have been captured by the original claims. Did I characterize correctly what the board said? And if so, why are they wrong? So I would disagree, your honor, because I'm not sure that's exactly what the board said. If you look carefully at what the board said on APEX 71 to 72, what the board is simply doing is on APEX 71, the example that your honor gave about the existence, that's from the petitioner. And the board is simply saying, in opposition, petitioner argues. Okay. And you're right to point that out. They go on at 72 and 73, I thought, to adopt what the petitioner's analysis was. So again, your honor, there's no adopting that argument from the board. There's nothing in 72 and 73 saying we adopted. What the board said simply was that eliminating this limitation of setting a value. All right. Help me with that then. At the bottom of 72, this is the board speaking now, I think, indisputably, in Claim 10, setting a value is limited to being based, at least in part, on information. In proposed substitute Claim 36, setting a value is not limited to being based, at least in part, on information. That's what they said, and it seemed to be adopting the petitioner's argument. So that's not exactly adopting the petitioner's argument. What the petitioner said is they gave an example of how other information in the program... All right. So let's assume it's not adopting the petitioner's argument. Isn't it saying that's a way the claims are being broadened? That is what the board is saying, and I would disagree with that, specifically for the reason that using the frequency parameter from the network itself is setting that value. And that's what we told the board. The simple example is when the power goes out in my home and my oven clock flashes 12, I know I have to reset that time. So I attempt a new time setup attempt. If my claim to algorithm was that time setup attempt using the time on my cell phone, one would know from that that I'm going to set the time on the clock to the time on my cell phone. And that's exactly what we told the board here in terms of the using, which the board recognized at the top of FX-72. Using that frequency parameter means you use all the information in it. The frequency parameter in the new connection setup attempt is set to that. And in that context, it's actually narrower than saying based at least in part on the information. It's not just based on the information. It is the information. It is the information. And that is what it's specific. And indeed, that's how, as the pages I read you before in Apex 822 to 828, we were traversing the prior art in saying that the prior art didn't teach that. It didn't teach using the network. And those statements themselves should also have import to the board and import to the meaning of these amended claims. Can you just, it seems like what you've deleted the based on was in connection with setting a value. Does that matter? The new language you added, the using language, is that the connection with the first part, setting a value of at least, or is that something different? So it is the same, Your Honor. So setting a value in the amended claims, you're still setting a value. It's narrower though, and what you're setting a value for is the frequency parameter now. And what the claims also then explain is that the setup attempt that you're attempting, where you're setting this value, is you're using the frequency parameter from the network. And as we explained repeatedly to the board, as the board acknowledged on the top of Apex 72, also at 822 to 828, that setting the value of the frequency parameter in the amended claims, you were going to use the frequency parameter to set that value. Just like the clock example I gave, Your Honors. It's going to take that time, that frequency parameter, and you're going to use it to set the first one. That is narrower than the original claims. That's narrower than the original claims because it's not setting it at least in part on some information. It's the same thing. It's the exact time. Well, it says, I mean, the differences, and they're all words, but I mean, the board says in the proposed claim, the value that is set need not be based in whole or in part on the information, on information in the connection. They construe using as, I presume, they're assuming using is a broader concept. And that's exactly the problem, Your Honors. We don't know what they meant about using, how they construed using. They didn't construe using. There's an applied construction potentially here where they said, where they rejected the idea of what Sissible said below repeatedly, that using the parameter means you use it. But again, at the very least, when in this initial prosecution of these amended claims, where we're saying that's the distinction over prior art, that should be given weight and said, that should as a proper- There needs to be a remand for the board to address further some of the arguments that are being made? Absolutely, Your Honor. I mean, that was part one, but now on the scope thing, that a remand is what's in order? Yes, Your Honor. So they would have to at least define what using is. If you look at 822 to 828 in application, which is also supported by expert testimony there in Exhibit 2008. And that's, again, in contrast to the example about this using the existence in Apex 71, that was the example given by Petitioner. If you look through to that citation, the opposition to the motion to amend, that's at 879 to 880 in the record. There is no reference to an expert opinion to support this idea that you can use the frequency parameter in just the existence of it. Because quite frankly, it just doesn't make sense. What's the standard of review here? Because I think you would suggest abuse of discretion or substantial evidence. I mean, there are some cases that talk about this as a claim construction dispute. It starts to feel like that a little on the one hand, but you didn't advocate sort of a de novo claim construction review, did you? No, it would fall under arbitrary and capricious, and specifically for the motion to amend under Veritas, it would be unreasonableness. And that would also be in terms of the unreasonableness of the procedure that was applied. And that also is something that this Court has repeatedly addressed. At the end of the day, aren't we just involved in claim construction? No, Your Honor. It's also procedures. So we've identified two specific things that the Board did not address. It's these additional claim limitations. And as this Court has repeatedly held, that all the arguments for and against in the IPR have to be considered by the Board, and they clearly did not consider these other cases. So that goes back to the first argument on the obviousness question, not on the scope. On the scope also, Your Honor, because they didn't even consider the effect of using, on one hand, you can call that a claim construction argument. But on the other, you can say very clearly that that is the effect of that additional limitation using on removing the rest of the language. And what the Board said is they simply said on the top of Apex 73, if you remove this limitation, it's broader. In a vacuum, that is, of course, true. If you remove a limitation, it's going to be broader. But you have to consider the claim as a whole, and the additional language that was used. And that's exactly what we said. And as this Court has repeatedly held, again, that as a matter of APA procedure, you have to consider that. The Board has to consider that, the arguments for and against, and also consider the arguments that were made and its error otherwise. And it's unreasonable, as in the Veritas case. We're way beyond our time. So we'll restart some of that, and let's hear from you. Thank you, Your Honor. I may please the Court, Guy and I, for the petitioners. There's a few issues to respond to, but I note that my colleague focused on the motion to amend, so I will forgo argument on the other briefed issues. With regard to the enlarging, the broadening of the scope, I think we can think of some examples where used is broader than based on. The basic change from the original claim was setting the value based on, as opposed to the amended claim using the parameter. And we can find trivial examples, I grant, but there are certainly examples where you can use something. Well, let's look at what the Board said, though. The Board talked about based, but did the Board go into a discussion of based versus using? Yes, it did. Okay, where is that? The broadening issues in the... It should be 72. In the 70s, yep. So the discussion is at pages 69 toward the end, and it's at 72, 73. One example we might think of is if I took the parameter, if I calculated the frequency, I took this frequency parameter and I calculated frequency by multiplying and then dividing by the frequency parameter. I've used it, but the end result will not be based on it. I'm focusing on what the Board said about this, and I'm seeing they were clearly talking about the deletion of the based, at least in part on, right? That's right, Your Honor. Where do they juxtapose the using is broader? Where do they talk about the scope of the using limitation? Well, I think in part they say it's the patent owner's burden to show that it does not enlarge the scope and that they fail to do that. Where are you reading from? There are only two pages, so can you point me to which paragraph you're talking about? At 71 in the revised motion, the patent owner fails to address whether deleting the phrase enlarges the scope. We're still talking about the phrase, deleting the phrase. Are you asking where they specifically talk about using? I thought you came up here and reasonably started talking about the scope of using vis-a-vis the scope of based on, and I couldn't recall seeing where the Board contrasted or compared the scope of those two sort of phrases. That's what I'm looking for. Because that was your argument, right? I mean, you were going to talk to us about using versus... Yes, Your Honor. The closest I see, well, I see at 72 they talk about, we agree that adding an element, right, adding using, this is at the top middle of 72, we agree with the patent owner that adding the third and last limitation using the frequency parameter narrows. However, we do not agree that deleting the phrase based at least in part simply adds further clarity and does not broaden. We have to remember in context that the Board gave preliminary guidance on these claims. And in the preliminary guidance, the Board was already indicating to patent owner that this language would be broadening. And so they were given an opportunity to clarify. This is at appendix page 770, where there was preliminary guidance saying, indicating that this is a broadening. And the Board went into considerable detail at that point, at pages appendix 770 to 772. So while some of that did not make it into the final written decision, the Board was certainly indicating to patent owner that this was a broadening of the scope and yet patent owner insisted on this claim. So the broadening of the scope in the Board's view was the deletion of the based on. It wasn't the inclusion of the using. No, not merely the inclusion. If it had retained both of those, if it had said using such and such and setting the parameter based on, that would have been a narrowing. If patent owner simply intended the same thing... So reading, trying to fairly understand the Board, the Board was really, their focus was deleting the based on. I think that's right, Your Honor. And where do they explain why that matters or why that isn't sort of made up for when you talk about using? Why based on, using isn't the same as based on? That's what I'm kind of looking for, which I thought was where you started. You were going to make that argument and I wanted, I interrupted you. Now I'm sorry I did. Well, at page 72 in the bottom, they write in proposed substitute claim 36, setting a value is not limited to being based at least in part on information in the frequency parameter. And carrying on to page 73, the value that is set need not be based on information and thus claim 36 is broader. I am not sure there's much more detail about that, but it certainly, the Board certainly did consider the arguments and the question of whether there was substantial basis, I think is satisfied. So what is your view of what it means to be using the frequency parameter contained within the connection? I think it could be used in any fashion rather than that the result reflects that issue. So the way I think of it is that when, in the original claim language, there was a language, the frequency is based on, is set based on the frequency parameter. And so to me, there's a direct relationship between the input and the output, between the frequency parameter and the resulting frequency. Whereas if you say using, that focuses a bit more on the process. It's anywhere in the mix, but it need not be reflected in the output. And so the example I was trying to give was if I take the frequency parameter and I use it in any fashion. For example, I multiply and then divide by the same number. Then I've used it, but the result is not based on that parameter. Can you help me on the top of 73, the Board says the value that is set need not be based in whole or in part on information in the connection rejection message. And thus claim 36 is broader in this respect than claim 10. Is that a whole separate argument or basis for why the Board is finding that the substitute claim 36 is broader than the original claim 10? I think it's related, Your Honor. I cannot say that I can distinguish between those two in my mind. I've thought of them as one and the same. So is that some further explanation of what you've been discussing with Judge Prost? Or how does it fit together in your mind? I think it does. They say the value that is set need not be based in whole or in part. And the example that I gave is an example that I would come up with to illustrate how something can be used and yet the result not be based on it. And just so I understand, when you say multiply and then divide, you're basically saying you haven't done anything. You have a number. If you multiply and then divide by that same number, you're going to end up with what you started with. But I've used it. You've used it. Yes. But it hasn't done anything. So it'd be hard to say the result is based on. Correct. Thank you. Yes. And so you see this as just further explanation of that whole single reason? Yes, Your Honor. If I were more clever, I would think of a perfectly simple analogy. But I couldn't. And how do you think that single reason, as you see it, that the board gives relates to what the board is characterizing as your argument or the petitioner's argument at page 71? Is the board adopting the petitioner's argument or is it coming up with some other reasoning? I'm referring to the big block quote at the bottom. Yes. I think that because it does not specify how it is used. To me, it's the key sentence there that, again, when you say based on, that focuses on the result. And if you say used in some vague fashion, but we don't know that the result is necessarily based on that. So to me, those issues were related. I cannot say that the board thought of it in the same way. But to me, yes, those are related because they're in the same, focused on the same part of the claim element. Before your time runs out, I want you to address what Mr. Gaiarza talked about in the first instance, which is the second thing that he also has to prevail on, which is the obviousness. And his main argument seems to be a process argument, which is that the board ignored all the stuff that he said in their petition, in their original submission. Well, this was not really fleshed out in the briefs. And I would say that other than that broad argument, I would say any further technical detail, the argument may be waived because the significance of this frequency parameter limitation is not discussed in the blue brief at all. But I will point out, for example, at the appendix page 30, that one of the references, for example, Callan, does expressly disclose the base station indicating to the mobile station channels for it to consider. So the frequency parameter had been considered in connection with the original claims, claims 10, 11, et cetera. And all of the references had this frequency parameter that was used in setting the value in the reattempt. So this was not something newly introduced. This was something that had been in the prior art. And you can see graphically at page 30 where there are these two words that are transmitted to the mobile station, including six channels for the mobile station to monitor. And it is one of those that it will use when it reconnects. I won't go into great detail on the other references, such as KISI and CS0005, but suffice it to say that the board found that they anticipated, as well as rendered obvious, together with the technical specification, basing the frequency on a frequency parameter in the communication from the base station. Okay. Leaving aside the question of waiver, can you just come around to Mr. Galliar's appointed... Well, the argument starts at 819 in the appendix and goes on for quite a while. And I understood his contention to be that the board really ignored that. That they didn't... So are you saying, assuming there's no waiver problem here, are you saying that the board did address this or that the board didn't have to address this because it was the same as the original petition that they had already addressed, or what? Well, for one thing, the board found that the claims had been enlarged. So we'll pass that. We're in a separate case. The... Your honest question was, did the board consider the... The arguments made in that portion of the patent honors. The final written... I mean, I understand. This is its argument on the substitute claims, right? Yes, that's right. Okay. So is it your view that the board adequately considered and addressed that? Because I don't think it cited to this right. Cited to the reply or the response. But the board didn't seem to cite to the arguments made in this definition. I think the court focused indeed on the RRC protocol element of the substitute claims, which it found was obvious in light of the technical specification. As to whether there was a specific discussion about the frequency parameter, I think the court... Excuse me. I think the board understood that those were essentially co-extensive with the original claims. Did it say that? When you find a place where the suggestion was made, we're not, you know... I think at page 74, by focusing on the RRC protocol, the board is indicating that it understood this to be the main, the principal distinction. And then at 75, it talks about the arguments previously advanced that it had considered. And I understand that includes the frequency parameter. So what would you have us do if we were to conclude that the substitute claims are not improperly enlarging and that the argument we heard today from Mr. Garza is not waived in the blue brief? Would we remand or do you still win? I think based on the extensive discussion of the prior art, including the frequency parameter in the prior art, such as CALIN-KISSI-CS-0005, I think the board can... Excuse me. The court can affirm based on perhaps harmless error or... I don't think it matters because the references that were discussed... Wait a minute. You're not saying that we could affirm the board on a harmless error standard? Is that what you're suggesting? I would think so because there's no... If the error were mere failure to address that element, it is harmless because had the board addressed it, it would have found that element to be found in the prior art based on the discussion of the original claims. How could it be harmless error if we don't have a board decision on that point? We have the board's decision on the original claims, which talk about the frequency parameter. And the references that were discussed in connection with the original claims show exactly how the frequency parameter is used by the mobile station in setting the frequency. I'm assuming, I don't recall exactly now, but that Red didn't really respond to this argument, but I think your answer to me would be because it really wasn't made directly in blue. Yes, that's right, Your Honor. Thank you. Thank you. We'll restore two minutes, everybody. Just a few quick rebuttal points, Your Honors, if I may. On the forfeiture point of the argument not being raised in blue, again, I just want to highlight that we're not asking for reversal here. We're not asking for a decision on the merits. All we're saying in blue and what I'm saying today is that there was a procedural error by the board. And that's what Blue said. Okay, I'm sorry. I'll give you a couple more minutes because I really want you to show me where Blue really raised this procedural error of failing to address it. Because I'm still having... So it's a very simple argument. The argument that Blue raised on page 28 of the blue brief is that these additional revisions to substitute claim 36 that demonstrated the patentability of substitute claim 36 and its dependent claims of the prior art were not addressed. And then it goes on to also say that the patent... When does it say that were not addressed? The board... Okay, so it says the only... It says the only claim limitation that the board analyzed was this. The board did not analyze any other revisions? Yes, Your Honor. And so I think that aligns with what my friend said is that, yes, the board did talk about RRC protocol and that was the primary argument. But there were these other arguments on these six pages that addressed exactly what the board was looking for in its opinion. The board just simply looked at a reply instead of the opening. And this is a very simple, basic procedural argument. The same thing on page 29 where we're talking about the motivation to combine is that the board didn't address these additional limitations in the motivation to combine. That's a very... Help me. Put yourself in my shoes or some other Federal Circuit judge's shoes preparing for argument. How am I to know in assessing your argument that the board... Your argument is the board overlooked a bunch of things. I have to assess, did the board overlook a bunch of things? Don't I need to know what those bunch of things are in order to review and be prepared to figure out, if you're right, that the board overlooked it? It can't just be that you can say the board overlooked a bunch of things and then I don't know until I come into court what those bunch of things are. That can't be fair, can it? No, saying a bunch of things would not be fair, Your Honor. But here we didn't say... Where did you say the bunch of things that you specifically started with for five minutes today? We specifically said the other revisions to substitute claim 36. That's what the board overlooked. But how was I to know, let's just say, in preparing for today, what those other substitute revisions were and then go back and look carefully at what the board did and see that they didn't talk about those? Oh, I don't think there's any question that we discussed the other revisions, Your Honor. That's on pages 25, 26, and 27 of the Blue Brief. We specifically said what these other revisions were. And then on page 28, we said the board didn't address those other... 25 and 26 were all about this enlargement. It wasn't about the obviousness, right? The obviousness... Yes, it's talking about the scope of the claim, what revisions were made there. The original claim included these parameters, but it was changed to add these other parameters. That's what was being discussed there. So I think on 28, where we're saying the other revisions, it should be clear that the other revisions, particularly in context of the sentence before, is that the board did analyze RRC protocol, but it didn't analyze the other revisions. And other, it says, did not address the other prior art references. Are we supposed to know what you're talking about there? That's at the bottom of 28. So that's talking about the TS-331 and the substitute claim. That's slightly different. What we're talking about is a sentence right before where we essentially said they addressed the RRC protocol, but they did not address these other claim limitations. And I would submit that if you look at the board's opinion on 75, it's very clear what the board did wrong. The board simply cited the reply. And I think also in Apelli's brief on page 30, they cited to that whole section that I just discussed with your honors. That was in the Apelli's brief. So it certainly was on notice. And even if there were some type of forfeiture, which I don't agree there was, because of the narrow issue here, that the court should consider it because as the Apelli's brief shows, they were aware of these pages. They listed them in their brief itself. But just to go quickly. If I might, the argument that you say the board overlooked is captured at A-819 and the pages following it, right? A-22 to 28. A-22, A-822. A-822, okay, there. Apex-822. So if I go back and reread your blue brief, what's going to clue me into the fact I need to go turn to A-822 to A-828 to understand what you're talking about? So A-822 cited on the next page, on blue brief page 29, where we're talking about the motivation to combine. That section of the record below, A-822 to A-828, was talking about motivation to combine the actual references that the board was relying on. And so we did cite to that start of that opening discussion at A-822. And do you ever argue in the blue brief, hey, what the board did was only cite to our reply brief on the motion to amend. They overlooked our opening brief on the motion to amend. That argument specifically was not made. I believe that would be apparent from reading the board's opinion in it. And that argument is just to reiterate, you said this argument on A-822 is exclusively about motivation to combine. That's where it starts A-822 and it goes on to A-828. And I believe that's why Red in their brief even cited the full range, A-822 to A-828, when they're talking about motivation to combine. And so I believe that is in the appeal. In terms of the specific response, if I may, my friend mentioned Kalin and saying that the board found that it did this, but ultimately Kalin itself selects the channel, not the other way around. And in terms of the meaning of... I have a thought, because we're way above time. Sure. In terms of the meaning of use, I would point the court to column three, lines 27 to 35 of the patent, where the term using actually appears. And what it's... Hold on, let me turn to it. Column three, you said? Column three, lines 27 to 35. And so it's talking about using. Here, the example is using a carrier frequency. What using in the art simply means is that it's in use. The argument that the board referenced from petitioners on the bottom of Apex 71 about the existence, that wasn't supported by expert testimony. The analysis on A-822 to A-828 was, and the meaning of using in context of this patent is very clear, as being in use. And that's why it's narrower in that context. And Alyssa, any other questions? Thank you. We thank both sides for cases submitted. Thank you.